(Decided 15th February, 1870.)

## MARY E. MORRILL *vs.* HUGH GELSTON.

### *Writ of Habere Facias Possessionem.*

Under the Chancery practice in this State, a writ of *habere facias possessionem*, is not the appropriate remedy to enable a purchaser to obtain possession of premises, sold under a decree passed in an *ex parte* proceeding to foreclose a mortgage, in pursuance of Article 4, sections 782, &c., of the Code of Public Local Laws, and which the party in possession refuses to surrender.

APPEAL from the Superior Court of Baltimore City, in Equity.

The cause was argued before STEWART, MAULSBY, GRASON, MILLER and ALVEY, J.

*J. Montgomery Peters,* for the appellant.

*John H. Ing* and *Attorney General Jones,* for the appellee.

The decree, and all the proceedings in the Court below, were in accordance with the provisions of Article 4, sections 782–786, of the Code of Public Local Laws, which is a codification of the Act of 1833, ch. 181. The proceedings under that Act were contemplated to be *ex parte,* until after the decree and the sale under it; and the propriety of the decree,

Morrill *vs.* Gelston.

and the validity of the sale made thereunder, were to be inquired into and contested after the passage of the order of ratification *nisi*, and before the final order of ratification should be passed. . *Eichelberger vs. Harrison*, 3 *Md. Ch. Dec.*, 89, concurred in by the Court of Appeals in *Black vs. Carroll*, 24 *Md.*, 255; *Hays vs. Dorsey*, 5 *Md.*, 99; *Ing vs. Cromwell*, 4 *Md.*, 31–36; *Kaufman vs. Walker*, 9 *Md.*, 229, 233, 241.

The terms of the assignment to the appellant of the leasehold interest show that she took it with full knowledge of the appellee's mortgage, and subject to it. The law, therefore, fixes her with full knowledge of all the legal incidents of that mortgage, and, among them, the right of *ex parte foreclosure* and *notice* of order of ratification *nisi*.

MAULSBY, J., delivered the opinion of the Court.

This is an appeal from an order of the Superior Court of Baltimore city, directing a writ of *habere facias possessionem*, to compel the delivery by the appellant to the appellee of the premises in the proceedings mentioned. They had been sold, under a decree in an *ex parte* proceeding, to foreclose a mortgage given by William M. Willis to the appellee, under the provisions of Article 4, sections 782, &c., of Public Local Laws, Baltimore city.

A petition for a writ of *habere facias* was filed April 6th, 1861, alleging that the appellee had, through his agent, "demanded possession of the occupants, viz: either the defendants or tenants of said property, who were in *pendente lite*, such at the time of the sale, and that said occupants have refused to vacate and yield to him possession," and praying "that the parties in possession, known as Mrs. Morrill and Judge Peters," may be required to shew cause why a writ of *habere facias possessionem* should not issue, &c.

On the same day an order was passed directing "a copy of the petition and order to be served on the occupants of the premises in the petition referred to, on or before Wednesday,

10th of April *next*, requiring the said occupants to show cause on or before. Saturday, 13th of April *next*," why the writ should not issue as prayed. Immediately under the order is endorsed: " See 39 Rule Eq." There is an affidavit of John P. P. Jones that, on the 3d of March, he demanded for the appellee possession of the premises, and received for answer that the matter should be investigated, and if the proceedings were regular they would vacate, and that, on the 22d or 23d of March, Mr. Peters told him they meant to contest the matter. On the 13th of April Mrs. Morrill and J. M. Peters answered, saving the benefit of all exceptions on all gronnds to the petition, Mrs. Morrill denying that she is a tenant of Willis or Gelston, and alleging that she is in possession by conveyance to her, by title adverse to Gelston and to the decree under which he claims, and denying that any decree under which Gelston claims has any validity against her title and possession. Mr. Peters alleging that he is not in any way tenant, and is merely a boarder in the house, and disclaiming any interest.

Before the final hearing, the appellant filed a deed from Frederick R. Waesche to her for the premises in question, dated 27th of October, 1859, in which the consideration paid by her to Wacsche was $1,100.00. This deed conveyed the property to her *subject to the operation of two mortgages* from William M. Willis, one to John S. Donnell and others for $1,000, and the other to Hugh Gelston for $400, and the appellee filed his title paper, a deed from the trustee, under the decree, bearing date 1st of March, 1861, the same day of the final ratification of the sale.

On June 22d, 1867, an order was passed making absolute the rule *nisi* of April 6th, 1861, which required the occupants of the premises to shew cause why a writ of *habere facias possessionem* should not issue, and from this order the appeal is taken.

The proceedings to obtain a writ of *habere facias* in this case were not under sec. 64, Art. 75, of the Code. An exami-

nation of that section will shew that its provisions apply to cases of process of *execution*, and to the *debtor* in the execution or any other person holding under the *debtor*, by title subsequent to the judgment or decree. The foundation of those proceedings must be, if it exist, in the powers of a Court of Chancery to enforce its decree. The usual practice in this State for enforcing the right of purchasers to possession is announced by Mr. ALEXANDER, in page 153 of his book. He refers to 1 *Bland*, 363, and CHANCELLOR BLAND refers, for the authority of a Court of Chancery to cause possession of land sold under a decree, to be delivered to the purchaser " under certain circumstances," to *Stribley vs. Hawkie*, 3 *Atkyns*, 275, and to *Dove and Dove*, 1 *Brown's Ch. Rep.*, 376, (*marg.*)

These cases shew that the rule in England, prior to the Statute of 1st and 2d Victoria, ch. 110, was to proceed by order, attachment, injunction and writ of assistance, to compel a tenant in possession to deliver possession to the purchaser. The note to the case of *Dove and Dove*, refers to DICKENS for a fuller report, and states the practice to be: 1st, service of the writ of execution of the decree, an affidavit of it and of the parties' refusal; 2d, an attachment issued thereon, but not to be executed; 3d, an injunction granted on such attachment, as of course; 4th, a writ of assistance directed to the sheriff, to deliver possession.

It further states that the first exercise of the power to compel the delivery of land by a Court of Chancery was in the reign of James I, in a case in 1 *Vesey*, 454, and a modern instance, agreeably to the above stated practice, in *Huguenin vs. Baseley*, 15 *Vesey*, 180, is cited.

Until the orders of 10th of May, 1839, the process for enforcing obedience to decrees and orders by the Court of Equity, were, in all cases, founded on contempt. 2 *Daniel's Ch. Pl. and Pr.*, 1054.

The practice in Maryland has been in conformity with the English practice, at least so far as to employ injunction as the

means of enforcing an order of the Court for delivering of possession of land.

In *McKomb vs. Kankey,* and in *Chapline vs. Chapline,* reported in notes to 1 *Bland Ch. Rep.,* 363, 364, CHANCELLOR KILTY treated that as the proper practice. In *Tongue vs. Morton,* 6 *Har. & John.,* 22, and in *Frazer vs. Palmer,* 2 *Har. & Gill,* 471, the same practice is found.

In *Garretson vs. Cole,* 1 *Har. & John.,* 370, CHANCELLOR HANSON examined at some length "what is the proper process for giving the complainant the full benefit of the decree" for the delivery of the possession of land decreed to be delivered, and concluded that "the process or writ which will best serve the complainant is an injunction to deliver possession," and after service of the injunction and refusal to obey, he ordered a commission or writ to issue to put the party in possession, pursuant to the directions of the decree and injunction. The writ is set out at length, and the reporters style it a writ of *habere facias possessionem,* but it is not so called by the Chancellor, nor is it so in fact, as will be apparent from comparing the form of the particular writ ordered with that of the writ of *habere facias possessionem* in 2 *Harris' Ent.,* 694.

The writ of *habere facias possessionem* is a judicial writ of a Court of Law, founded on the *ejectione firmæ,* in which the party is to be restored to the possession of his term, of which he was ousted. 3 *Bacon's Abr.,* 707. The form of the writ in 2 *Harris' Entries* corresponds with this definition—to restore a party to the possession of his term of which he was ousted.

The *habere facias seisinam* lies in real actions, where the freehold is recovered. 3 *Bacon's Abr.,* 707.

The form of this writ in 2 *Harris Ent.* corresponds with this definition. Where a *seisin* is to be delivered of land of which the party using the writ had not been in prior possession, the latter would seem to be the appropriate writ. The former to restore a possession of which the party has been ousted.

Technically, then, the writ of *habere facias possessionem* would not be an appropriate writ for the ordinary use of a Court of Chancery in compelling delivery of land sold under its decrees, or under executions on its decrees.

The Act of 1825, chap. 103, embodied in section 64, Art. 75, of the Code, introduced authority in the Court of Chancery to issue a writ in the nature of a writ of *habere facias possessionem* in the cases in the Act specified, that is, in cases of sales of land by any sheriff, &c., by virtue of any process of execution, and where the debtor named in the process, or any person holding under the debtor, by title subsequent to the date of the judgment or decree, shall be in actual possession; and then the writ was authorized only within the first four days of the term next succeeding that to which the process of execution was returnable, in case of failure of the debtor or other person concerned to shew good cause to the contrary.

The Act of 1864, ch. 283, repeals sec. 64, Art. 75, of the Code, and enlarges the cases in which a writ in the nature of a writ of *habere facias* may be issued, but confines the power to issue it, where lands have been sold by any trustee, under the decree of any Court of this State, to the case in which the debtor named in the decree, or any other person holding under such debtor, by title subsequent to the date of the decree, shall be in actual possession, &c. And this Act requires an application for the process, verified by affidavit, and time for shewing cause, not less than fifteen nor more than thirty days from the filing of the application.

The proceeding in this cause was prior to the Act of 1864, and is not affected by it in the present state of the record, and that Act, as also the Act of 1825, is referred to for the purpose of illustrating the spirit of our legislation to be the confinement of the remedy to specified cases, and in them to afford the party against whom it is sought ample opportunity to resist it.

This case rests on the Chancery practice in Maryland. The process prayed and ordered is a writ of *habere facias posses-*

*sionem.* We are of opinion that such a proceeding is not sanctioned by the Chancery practice, and is not authorized by the powers of a Court of Chancery of this State, under the circumstances of this case.

*Order reversed.*

(Decided 17th February, 1870.)